**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DAVID S. GILREATH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 05-0222-WS-M** |
| | ) | |
| **ELAINE L. CHAO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 34). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 35,37, 42-44), and the motion is ripe for resolution. After carefully considering the foregoing materials, the Court concludes that the motion for summary judgment is due to be denied.

## BACKGROUND

The plaintiff was employed by the Occupational Safety and Health Administration ("OSHA") as a Compliance Safety and Health Officer ("CSHO"), a GS-12 position. After being diagnosed with post-traumatic stress disorder, he received accommodation as a GS-9 Permanent Duty Officer ("PDO"), but at the GS-9 rate rather than at the GS-12 rate he earned as a CSHO. The plaintiff's sole claim is that the defendant's action "in downgrading [his] pay after providing him with the accommodation to become a full-time duty officer based upon his gender violates Title VII." (Doc. 1, ¶ 13).

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

Summary judgment should be granted only if "there is no issue as to any material fact

and the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986))(footnote omitted).

The parties have submitted a number of exhibits, to some of which they have not referred in their briefs and to some of which (especially depositions) they have referred only in part.  There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1]  Similarly, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  Accordingly, the Court's review is limited to those portions of the exhibits to which the parties have specifically cited.[2]  The Court's review is similarly limited to those legal arguments the parties have expressly advanced.

Because the plaintiff does not rely on direct evidence of discrimination, the shifting burden appropriate for cases resting on circumstantial evidence applies.  In Title VII cases alleging discrimination, the burden is first on the plaintiff to establish a prima facie case.  If he succeeds, the employer must meet its burden of producing evidence of one or more legitimate, nondiscriminatory reasons for the adverse employment action.  The burden then shifts back to

---

[1]*E.g., Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 672 (10th Cir. 1998)("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so."); *accord Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2.

[2]Thus, the parties' too-frequent practice of making factual assertions without supporting record citations necessarily results in those assertions being ignored for present purposes.

the plaintiff to show that the employer's proffered reasons are a mere pretext for illegal discrimination.  *E.g., Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002).

### A.  Prima Facie Case.

"To establish a prima facie case for disparate treatment in a race [or sex] discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job."  *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006).  The defendant challenges only the third element.  The plaintiff relies on Lana Graves as his only comparator, and the defendant argues both that she is not similarly situated to the plaintiff and that she was not treated better than he.

Viewed most favorably to the plaintiff, the evidence concerning his situation is as follows.  The plaintiff worked in the Mobile area office, where Graves served as Area Director. In December 2001, the plaintiff advised Graves that he had received a diagnosis of post-traumatic stress disorder, that the condition was attributable in part to having worked approximately 50 fatalities as a CSHO, and that his doctor had advised him not to work additional fatalities.  Graves responded by temporarily assigning him to work full-time as duty officer while his condition was evaluated by OSHA officials outside the Mobile office.

A duty officer works in the office and does not investigate workplaces or accidents. Before the plaintiff was assigned to work full-time as a duty officer, the duties of a duty officer had been rotated among the CSHOs.  The plaintiff retained his classification as a CSHO and his pay rate as a GS-12 while awaiting OSHA's decision concerning accommodation.  During this process, the plaintiff notified OSHA that he could not or would not perform inspections and that he would not accept re-assignment to another location.  Ultimately, OSHA concluded that the only position the plaintiff could fill in the Mobile office was as PDO, and he was offered re-assignment to that GS-9 position.  OSHA informed the plaintiff that he could not retain his GS-12 pay rate once assigned as a PDO but could be paid only at the GS-9 rate generally applicable to that position.  The plaintiff — happy with the PDO position but unhappy with the pay rate —

reluctantly accepted this accommodation in February 2004.

Viewed most favorably to the plaintiff, the evidence concerning Graves' situation is as follows.  As Area Director, Graves was the head of the Mobile area and a GS-14.  Graves reported to Cindy Coe Laseter, Regional Administrator for Region IV of OSHA, which encompasses the Mobile area.  In early 2002, Laseter approached Graves concerning what she perceived as Graves' underperformance.  Graves advised Laseter that she had had a nervous breakdown and asked to be relieved of her management duties.  The two agreed that Graves would request an accommodation of her condition in the form of assignment to a new GS-13 position that Laseter would create in the Mobile office.  Laseter then learned from other OSHA officials that Graves could not receive retained pay if she were simply re-assigned to the GS-13 position but that she would receive retained pay if she were first re-assigned as Area Director for the Frankfort, Kentucky office, declined this re-assignment, and then was re-assigned to the GS-13 position.  Graves had already advised Laseter that she did not want to move.  Nevertheless, in order to secure retained pay for Graves, Laseter offered Graves re-assignment to Frankfort, which Graves declined as Laseter expected.  Graves was then offered the new GS-13 position at a GS-14 pay rate for a maximum term of two years.  Graves accepted the offer, worked for two years, and retired.

At all relevant times, OSHA regulations provided as follows:

Except as otherwise covered in paragraph (a) of this section, the head of the agency may provide pay retention to eligible employees whose rates of basic pay would otherwise be reduced as the result of a management action.

5 C.F.R. § 536.104(b).[3]

Grade and pay retention shall not apply to an employee who ... is reduced in grade or pay for personal cause or at the employee's request ....

*Id*. § 536.105(a)(3).[4]

"To make a comparison of the plaintiff's treatment to that of non-minority [or female]

---

[3]None of the exceptions of subsection (a) are alleged to apply to this case.

[4]The regulations have been modified and re-numbered since the events surrounding this lawsuit.  The Court thus does not rely on the current version cited by the defendant.

employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). The defendant notes several differences between the plaintiff and Graves which, it maintains, prevents him from establishing that the two are "similarly situated" for purposes of satisfying his prima facie case:

- Graves was a member of management, but the plaintiff was not;

- The plaintiff, as a member of a bargaining unit, was subject to a memorandum of understanding ("MOU") concerning retained pay, but Graves was not;

- Graves accepted an offer of retained pay for a limited period of two years, but the plaintiff wanted a permanent accommodation;

- Graves was underperforming as Area Director;

- Graves continued to perform management functions in the GS-13 position, but the plaintiff did not continue to perform CSHO functions in the PDO position; and

- The plaintiff effectively received 26 months of GS-12 pay for GS-9 work before his request for accommodation was denied as to retained pay, but Graves did not work an interim period receiving GS-14 pay for GS-13 work before her accommodation was granted.

(Doc. 35 at 20; Doc. 44 at 2-5). The Court reviews these distinctions in turn.

With respect to Graves' status as management, "[t]he relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies." *Lathem v. Department of Children and Youth Services*, 172 F.3d 786, 793 (11th Cir. 1999). Here, the defendant admits that both the plaintiff and Graves were subject to the quoted regulations allowing for retained pay when the reduction in grade results from management action but not when it results from employee request. (Doc. 44 at 3). As noted above, there is evidence that both the plaintiff and Graves requested re-assignment to less stressful positions.[5]

---

[5]There is of course evidence that, after Graves requested re-assignment to a non-management position, she received a directed assignment to another management (Area Director) position in Frankfort, and there is evidence that declining a directed re-assignment (as Graves did) triggers the "management action" exception to the prohibition on retained pay. However, there is also evidence that the directed re-assignment was an artifice designed to avoid

With respect to the MOU, that document merely provides that "[a]ll bargaining unit employees who do not meet the physical requirements of the position, will be reasonably accommodated at their current grade and pay or be offered a position at retained pay." (Laseter Declaration, Exhibit A at 1, ¶ III.1). That is, the MOU would have guaranteed the plaintiff (but not Graves) retained pay in the event of a failed physical. Because neither the plaintiff nor Graves failed a physical, the MOU is equally inapplicable to both.

As noted, the plaintiff and Graves were equally subject to a prohibition on receiving retained pay in the event of a re-assignment sought by the employee. Because both sought re-assignment to a lower position, both were barred by regulation from receiving retained pay. Given that both were subject to the same regulation, and given that both requested re-assignment and thus triggered its mandatory application, it is difficult to see how the remaining dissimilarities identified by the defendant could concern "relevant respects" for purposes of the governing analysis. The defendant has not addressed this awkward state of affairs, and its concession that "[e]xact correlation is neither likely nor necessary," (Doc. 35 at 18), drives the final nail into the coffin of the defendant's "similarly situated" argument. Nevertheless, for completeness the Court explains below why the defendant's identified dissimilarities do not aid its argument even if considered.

With respect to the duration of retained pay, there is evidence that the defendant, knowing that Graves intended to retire in two years, offered her the GS-13 position with retained pay for two years on a take-it-or-leave-it basis, and Graves took it. There is no evidence that the defendant made a similar offer to the plaintiff (of retained pay for either two years or until retirement),[6] and thus no evidence that the plaintiff, unlike Graves, refused such an offer.

With respect to job performance, there is evidence that Laseter was dissatisfied with Graves' performance as Area Director, and the defendant admits that the plaintiff was similarly unable to perform inspections,  the "central duty" of a CSHO.  (Doc. 44 at 3-4).

---

the prohibition on retained pay that was triggered when Graves requested re-assignment.  The defendant's employment of this artifice does not affect the "similarly situated" calculus, and the defendant does not argue otherwise.

[6]There is evidence that the plaintiff intended to retire within four years.

With respect to Graves' continued performance of management functions after re-assignment, the defendant has identified no evidence of Graves' re-assigned duties.[7]  Nor has the defendant explained the relevance of its proposition; whatever duties Graves performed in her re-assigned position, the agency classified it as a GS-13, and the defendant has offered no evidence that an OSHA employee can be paid above grade simply because she performs management, or any other particular, functions.  Finally, the defendant ignores its own evidence that the plaintiff's duties as a PDO were, at least in the Mobile office, historically performed by CSHOs, so that he too continued to perform some of his prior functions.

With respect to the plaintiff's receipt of GS-12 pay while performing GS-9 work, the defendant was obligated to pay him at GS-12 because it continued to classify him as a GS-12 employee — just as Graves, as Area Director, continued to receive the GS-14 pay accompanying that job title even after her mental condition prevented her from adequately performing the duties of the position.  Graves and the plaintiff are similarly situated because both were paid in accordance with their classification, not their performance, up to the moment of their re-classification.

The Court has and expresses no opinion whether different or better supported arguments might have demonstrated that the plaintiff and Graves are not similarly situated in all relevant respects.  The Court concludes only that, on the evidence and argument presented, the defendant has not carried its initial burden on motion for summary judgment of showing that there is no genuine issue of material fact concerning this element of the plaintiff's prima facie case.

Utilizing the same evidence for a different purpose, the defendant argues that, even if Graves and the plaintiff are similarly situated, she was not treated more favorably than he because both received approximately two years of retained pay.  The difficulty, however, is the same one noted previously: the plaintiff did not in fact receive retained pay after being moved to a lower classification, but received the GS-12 pay to which he (as a GS-12 employee) was entitled while performing a restricted range of duties.  Graves, but not the plaintiff, received retained pay after

---

[7]Her cited evidence states only that Graves' re-assigned job title was "Safety and Health Manager," (Hawkins Declaration at 4-5), and the plaintiff's evidence shows Laseter describing the job as a "non-management position."  (Plaintiff's Exhibit 5).

being assigned to a lower grade, and that constitutes more favorable treatment.

### B. Legitimate, Non-Discriminatory Reason.

The defendant explains that it did not grant the plaintiff retained pay because the re-assignment to PDO was the result of his request rather than management action (precluding retained pay under the regulations) and not the result of a failed physical (precluding retained pay under the MOU). (Doc. 35 at 24-26; Doc. 44 at 6). The plaintiff does not dispute that the defendant has met its intermediate burden.

### C. Pretext.

As noted in Part B, the defendant's articulated legitimate, non-discriminatory reason for failing to provide the plaintiff retained pay when he was re-assigned to a lower grade is that the re-assignment resulted from his request, thereby tying the defendant's hands and precluding an award of retained pay. As noted in Part A, however, there is evidence that Graves likewise requested re-assignment to a lower grade, yet she received retained pay. This evidence would entitle a jury to conclude that the plaintiff's request for re-assignment did not actually preclude an award of retained pay, rendering false the defendant's articulated reason for its action.

"Proof that the defendant's explanation is unworthy of credence ... may be quite persuasive" evidence of discriminatory intent, both because the jury is entitled to consider a party's dishonesty as evidence of guilt and because, since the employer is in the best position to articulate its actual reason, eliminating the articulated reason often leaves discrimination as the most likely alternative. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). Thus, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id*. at 148. After *Reeves*, "in the *usual* case, rejection of the reasons offered by the defendant, combined with the evidence supporting the prima facie case, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1185-86 (11th Cir. 2005)(emphasis in original)(internal quotes omitted).

The defendant does not argue that this is not the "usual case" contemplated by *Ledbetter*.

-8-

It does, however, offer this gender-neutral explanation for treating Graves more favorably with respect to retained pay: that Laseter "wanted Lana Graves out of the job as Mobile Area Office Director and was willing to do whatever was necessary to achieve this effect."  (Doc. 44 at 8). The defendant, however, has identified no evidence that paying Graves at a GS-14 rate was necessary in order to remove her as Area Director or that freeing up the Area Director position was Laseter's motivation for providing retained pay.[8]  Even if there were such evidence, the jury would be entitled on this record to reject it.[9]  This, then, is not the "unusual case" under *Ledbetter*.[10]

As with the prima facie case, the Court has and expresses no opinion whether, had the defendant presented additional evidence or more incisive argument, it could have shown the absence of any jury issue as to sex discrimination.  The Court is limited to the evidence and arguments the parties elect to present and, on that record, the defendant has not shown the absence of a genuine issue of material fact as to sex discrimination.

---

[8]For example, there is no evidence that Laseter and her superiors lacked authority to remove a non-performing Area Director except on such terms as the Area Director dictated.

[9]For example, Laseter's letter to Graves, written after the conversation in which they agreed that Graves would request accommodation to a new GS-13 position, makes clear that retained pay is not guaranteed but "subject to the approval of the OSHA Assistant Secretary." (Plaintiff's Exhibit 5).

[10]Whether the plaintiff's prima facie case, plus enough evidence to allow the jury to disbelieve the defendant's articulated reason, is enough to create a jury issue on discrimination depends on such things as "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case."  *Reeves v. Sanderson Plumbing*, 530 U.S. at 148-49.  Both the plaintiff's prima facie case and his evidence challenging the defendant's articulated reason are reasonably strong, and the defendant has identified no other evidence supporting its case.

**CONCLUSION**

For the reasons set forth above, the defendant's motion for summary judgment is **denied**.

DONE and ORDERED this 11th day of September, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE